UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MARIA JEWELL; ERIC PARHAM; GORDON GRAHAM; and SCOTT GOSHA, | Case No. 20-CV-1427 (PJS/DTS) |
| Plaintiffs, | |
| v. | ORDER |
| LARRY HERKE, in his official capacity as Commissioner of the Minnesota Department of Veterans Affairs; KEITH ELLISON, in his official capacity as Attorney General of the State of Minnesota; and TIMOTHY WALZ, in his official capacity as Governor of the State of Minnesota, | |
| Defendants. | |

Brian K. Lewis, FRANCIS WHITE LAW, PLLC, for plaintiffs.

Kevin Jonassen, MINNESOTA ATTORNEY GENERAL'S OFFICE, for defendants.

Plaintiffs Maria Jewell, Eric Parham, and Scott Gosha are military veterans and Minnesota residents who have made or anticipate making claims for veterans benefits to the United States Department of Veterans Affairs ("VA"). Plaintiff Gordon Graham resides in Washington and is a VA-accredited claims agent authorized to represent veterans before that agency. Plaintiffs bring this action to challenge the constitutionality of two Minnesota statutes—Minn. Stat. § 197.6091 and Minn. Stat. § 196.05,

subd. 1(12)—that impose certain disclosure requirements on persons who charge a fee to assist veterans who seek benefits from the VA.

This matter is before the Court on defendants' motion to dismiss. For the reasons that follow, the motion is granted in part and denied in part. Specifically, the Court denies the motion as to plaintiffs' claims that the disclosure requirements are preempted by federal law and violate the First Amendment, grants the motion as to plaintiffs' remaining claims, and dismisses all claims against defendant Timothy Walz.

## I. BACKGROUND

### A. Legal Background

The VA administers programs that provide benefits to veterans and their dependents and beneficiaries. 38 U.S.C. § 301. In pursuing a claim for benefits from the VA, a veteran may use the services of a VA-authorized agent or attorney. *Id.* § 5904(a)(1). To be authorized by the VA to assist veterans in pursuing claims, an agent or attorney must meet certain standards set by the VA; moreover, an agent or attorney may not be able to practice before the VA if he or she has "been suspended or disbarred by any court, bar, or Federal or State agency to which the individual was previously admitted to practice and [has] not been subsequently reinstated." *Id.* § 5904(a)(2), (a)(4); 38 C.F.R. § 14.629. After notice and opportunity for a hearing, the VA may suspend an

authorized representative for various reasons, including if the representative has been suspended or disbarred by any court, bar, or federal agency. 38 U.S.C. § 5904(b).

The VA also authorizes representatives of federally approved organizations, such as the American Legion and Disabled American Veterans, to represent veterans before the VA. *Id.* § 5902(a)(1). In addition, the VA may authorize "any individual" to represent a particular veteran in connection with a particular claim. *Id.* § 5903(a). In both situations, the representatives may not charge for their services, and the representatives are subject to the same suspension provisions as authorized fee-charging representatives. *Id.* § 5902(b)(1)(A), (b)(2); *id.* § 5903(a)(1), (b); *id.* § 5904(b).

Minnesota has established a state Department of Veterans Affairs ("MVA") that, among other things, helps veterans obtain benefits from the VA. Minn. Stat. § 196.01; *id.* § 196.05, subd. 1. The MVA administers a "state soldiers' assistance fund" that is used for this purpose. *Id.* § 197.03. Under this program, veterans are usually referred to a federally approved veterans' organization for assistance, although in some cases veterans may be assisted by a county veterans service officer. Compl. ¶ 66; Minn. Stat. § 197.603, subd. 1.

In 2017, the Minnesota Legislature enacted the provisions that are challenged in this action. Those provisions are intended to ensure that, before a veteran pays someone to assist him or her in pursing a claim for benefits from the VA, the veteran is

made aware that such assistance is available at no cost.  Specifically, Minn. Stat. § 197.6091 provides, in relevant part:

> **Subd. 2.  Advertising disclosure requirements.**  A person advertising veterans benefits appeal services must conspicuously disclose in the advertisement, in similar type size or voice-over, that veterans benefits appeal services are also offered at no cost by county veterans service officers under sections 197.603 and 197.604.
>
> **Subd. 3.  Veterans benefits services disclosure requirements.**  A person who provides veterans benefits services in exchange for compensation shall provide a written disclosure statement to each client or prospective client.  Before a person enters into an agreement to provide veterans benefits services or accepts money or any other thing of value for the provision of veterans benefits services, the person must obtain the signature of the client on a written disclosure statement containing an attestation by the client that the client has read and understands the written disclosure statement.

*Id.* § 197.6091, subds. 2, 3.  Failure to comply with these provisions subjects violators to a civil penalty of up to $1,000 per violation, with each day of a continuing violation constituting a separate violation.  *Id.* § 197.6091, subd. 4.

A separate provision directs the MVA to develop a written disclosure statement for use by fee-charging representatives who seek to comply with § 197.6091, subd. 3.  *Id.* § 196.05, subd. 1(12). Accordingly, the MVA has developed a one-page form that includes the following language:

## Disclosure Notice

**BEFORE YOU PAY FOR HELP OBTAINING VETERANS BENEFITS**

Please carefully read:

Veterans benefits services are offered at **no cost** by federally chartered Veteran Service Organizations, [by] the Minnesota Department of Veterans Affairs and by the Minnesota County Veteran Service Officers.

**This disclosure notice is being provided to you pursuant to Minn. Stat. 197.6091**

The Minnesota Department of Veterans Affairs, Veterans Service Organizations, and Minnesota County Veterans Service Officers urge you to consider contacting these free resources before paying for services.

*       *       *

You must sign this form if you wish to pay for services that you could receive at no cost from a Veterans Service Organization, the Minnesota Department of Veterans Affairs or Minnesota County Veterans Service Officer.  Do not sign this form or sign any agreement to pay for services if you wish to contact no cost help first.

Remember:
- You are not required to pay for assistance in obtaining veterans benefits.
- You are not required to sign this form in order to obtain your veterans benefits.

Compl. Ex. A.  The form also includes MVA's contact information.  *Id.*

### B. Plaintiffs' Allegations

Graham is a resident of Washington and is authorized to represent clients before the VA.  Compl. ¶¶ 18, 20.  Graham is not a licensed attorney in any state.  Compl. ¶ 19.

After the MVA promulgated the disclosure form pursuant to Minn. Stat. § 196.05, subd. 1(12), Graham decided that he would no longer accept clients from Minnesota. Compl. ¶ 60.

Jewell, Parham, and Gosha are veterans and residents of Minnesota. Compl. ¶¶ 2–3, 23–24, 29–30. Jewell, who served in the Marine Corps, recently pursued a claim with the VA concerning a reduction in her disability compensation. Compl. ¶¶ 3–5, 9–10. Jewell was originally represented by a county veterans service officer, but her case was later referred to the American Legion. Compl. ¶¶ 5–6. Jewell was unhappy with the change and sought to retain a VA-authorized private attorney. Compl. ¶ 7. Every attorney she contacted declined to represent her on account of Minnesota's new disclosure requirements. Compl. ¶ 8. Although Jewell's benefits were later reinstated, she alleges that she incurred damages as a result of the reduction. Compl. ¶¶ 10–17.

Parham, who served in the Army, believes that his VA rating for a service-related medical condition is incorrect. Compl. ¶¶ 24–25. Parham completed the initial paperwork to appeal his rating and wants to retain a private attorney to represent him before the VA. Compl. ¶¶ 26–27. Parham contacted an attorney, but the attorney declined to represent him, explaining that he could not ethically make the statements required in the MVA disclosure form. Compl. ¶ 28.

Gosha, a Navy veteran, used the services of Disabled American Veterans to submit an application for disability compensation to the VA. Compl. ¶¶ 30–31. Gosha wants to retain a private practitioner to help him pursue that claim and possibly seek a discharge upgrade. Compl. ¶ 32. Gosha first contacted an attorney and then contacted Graham, but both declined to represent him because they objected to presenting the disclosure form required by Minnesota law. Compl. ¶¶ 33–34.

## II. ANALYSIS

### A. Standard of Review

In reviewing a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Perez v. Does 1–10*, 931 F.3d 641, 646 (8th Cir. 2019). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570.

### B. Preemption

Plaintiffs first allege that Minn. Stat. § 197.6091 and Minn. Stat. § 196.05, subd. 1(12), are impliedly preempted by the federal laws that govern the provision and administration of veterans' benefits. *See generally* 38 U.S.C. § 101 et seq. As described

both at the hearing and below, the Court is inclined to agree with plaintiffs, but the Court has concluded that resolving this issue requires the development of a factual record and further briefing.

State law may be impliedly preempted in one of several ways. First, state law is preempted to the extent that it conflicts with federal law. *See Arizona v. United States*, 567 U.S. 387, 399 (2012). State law is in conflict with federal law when it is impossible to comply with both state and federal law or when "the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citation and quotation marks omitted).

Second, even if the state law does not conflict with federal law, a state may not regulate in a field that Congress intends to be governed exclusively by federal law. *Id.* Congress's intent to occupy the field may be inferred where there is a comprehensive federal regulatory scheme that leaves no room for state regulation or where the federal interest is "so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (citation and quotation marks omitted).

Although courts commonly use these categories of preemption—that is, "conflict preemption" and "field preemption"— as helpful analytical frameworks, they are not "rigidly distinct." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 n.5 (1990). Regardless of the

mode of analysis, the issue in every case comes down to the question of congressional intent. *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). To discern whether Congress intended to preempt state law, a court must examine the language, structure, and purpose of the allegedly preemptive federal law. *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 138 (1990).

Plaintiffs argue that the disclosure requirements are preempted under the principles of both conflict preemption and field preemption. With respect to conflict preemption: Plaintiffs have not identified an "impossibility" conflict—that is, plaintiffs have not shown that complying with the challenged Minnesota statutes makes it impossible to comply with any provision of federal law. As noted, however, conflict preemption also applies if state law "stands as an obstacle" to federal objectives. *Arizona*, 567 U.S. at 399 (citation and quotation marks omitted). Here, Jewell, Parham, and Gosha all allege that Minnesota's disclosure requirements have rendered them unable to retain private practitioners to represent them before the VA. While plaintiffs' experiences may be atypical, these allegations are sufficient to state a claim that the disclosure requirements obstruct Congress's intent that veterans have access to authorized, qualified private representatives to assist them in pursuing claims for VA benefits. Because resolving this issue will depend on the extent to which the disclosure requirements affect the ability of Minnesota veterans to retain private representation, a

factual record is necessary.  *Cf. Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 720–21 (1985) (discussing evidentiary record regarding whether state law would reduce the supply of plasma and thereby trigger conflict preemption).  For this reason alone, then, the Court must deny defendants' motion to dismiss plaintiffs' preemption claim.

With respect to field preemption:  It appears to the Court that Minnesota's disclosure requirements may be preempted under principles of field preemption,[1] and in particular under the Supreme Court's decision in *Sperry v. State of Florida ex rel. Florida Bar*, 373 U.S. 379 (1963).[2]  In *Sperry*, the Florida Bar charged a patent agent with the unauthorized practice of law.  *Id.* at 381.  The agent conceded that he was not a

---

[1]Plaintiffs cite *Mehrkens v. Blank* for the proposition that "Congress has preempted the field for veterans' benefits."  556 F.3d 865, 870 (8th Cir. 2009).  Although *Mehrkens* uses the word "preempted," *Mehrkens* has nothing to do with federal preemption of state law; instead, it concerns the scope of federal courts' subject-matter jurisdiction over claims relating to veterans' benefits.

[2]*Sperry* does not identify the species of preemption that it applies.  At least one court has treated *Sperry* as involving principles of conflict preemption.  *See Surrick v. Killion*, 449 F.3d 520, 530–34 (3d Cir. 2006).  In the Court's view, *Sperry* is better understood as applying a type of field preemption in an area of dominant federal concern—namely, federal authorization to practice before a federal agency.  *See Sperry*, 373 U.S. at 385 (explaining that states may not enforce licensing requirements "which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress"); *see also Hillsborough Cnty.*, 471 U.S. at 713 ("Pre-emption of a whole field also will be inferred where the field is one in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." (citation and quotation marks omitted)).  Again, however, these categories are not completely distinct.

licensed attorney, but defended himself on the basis that he was registered to practice before the United States Patent Office and limited his work to matters presented to that office. *Id.* at 381–82. The Florida Supreme Court enjoined him from performing such work within the state until he became a member of the state bar. *Id.* at 382.

The United States Supreme Court vacated the injunction, explaining:

> A State may not enforce licensing requirements which, though valid in the absence of federal regulation, give "the State's licensing board a virtual power of review over the federal determination" that a person or agency is qualified and entitled to perform certain functions, or which impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress. "No State law can hinder or obstruct the free use of a license granted under an act of Congress." *Pennsylvania v. Wheeling & Belmont Bridge Co.*, 13 How. 518, 566, 14 L.Ed. 249.

*Id.* at 385 (footnotes and citations omitted). The Court also rejected Florida's argument that the federal authorization only granted the right to practice in the "physical presence" of the Patent Office, explaining that the authorization permits "the performance of those services which are reasonably necessary and incident to the preparation and prosecution of patent applications." *Id.* at 385–86; *see also id.* at 404 (vacating the injunction because it prohibited the petitioner "from performing tasks which are incident to the preparation and prosecution of patent applications before the Patent Office"). Although the Court did not undertake to define those "services," the Court noted that they include, among other things, the right to advertise. *Id.* at 402 n.47

("it is entirely reasonable for a practitioner to hold himself out as qualified to perform his specialized work, so long as he does not misrepresent the scope of his license").

Here, as in *Sperry*, there is a federal scheme for authorizing agents to practice before a federal agency—in this case, the VA. The VA is charged with recognizing agents and attorneys "for the preparation, presentation, and prosecution of claims under laws administered by the Secretary." 38 U.S.C. § 5904(a)(1). The VA is also responsible for prescribing "qualifications and standards of conduct" for such authorized practitioners, including by specifying the "level of experience or specialized training" required and by restricting the amount of fees they may charge. *Id.* § 5904(a)(2), (a)(5); *see also* 38 C.F.R. § 14.629 (setting forth accreditation standards for attorneys and agents); *id.* § 14.632 (setting forth standards of conduct for appearing before the VA).

It is true that, in contrast to the actions of the Florida Bar in *Sperry*, the challenged Minnesota statutes do not purport to govern whether someone may practice *at all* before the VA. It appears to the Court, however, that there is a strong argument that these statutes effectively regulate the ability to practice before VA, as they attach substantial conditions to the exercise of the federal authorization and back up those conditions with significant financial penalties. *Cf. Surrick v. Killion*, 449 F.3d 520, 531–34 (3d Cir. 2006) (holding that state bar could not prevent attorney licensed in federal but not state court

-12-

from maintaining a law office in the state); *Silverman v. State Bar of Tex.*, 405 F.2d 410, 414–15 (5th Cir. 1968) (holding that state bar regulation limiting a federally registered patent attorney's ability to advertise his specialty was preempted because it conflicted with a federal provision permitting such advertising). As Minnesota's disclosure requirements "impose upon the performance of activity sanctioned by federal license additional conditions not contemplated by Congress," those disclosure requirements appear to be preempted. *Sperry*, 373 U.S. at 385.

Defendants argue that Congress did not intend to occupy the regulatory field, pointing to various federal provisions that refer to or incorporate state standards or that direct the VA to cooperate with state agencies and officials. *See, e.g.*, 38 U.S.C. § 5904(a)(4) (prohibiting VA from authorizing anyone who has been suspended or disbarred by any court, bar, or federal or state agency); *id.* § 5904(b)(7) (permitting VA to suspend any authorized agent or attorney who has been suspended, disbarred, or disqualified by any court, bar, or federal agency); *id.* § 5904(a)(3) (requiring every authorized attorney and agent to certify annually that they are in good standing in every jurisdiction in which they are authorized to appear); *id.* § 6306(c) ("In carrying out this chapter, the Secretary shall cooperate with and use the services of any Federal department or agency or any State or local governmental agency or recognized national or other organization.").

In the Court's view, however, these provisions have little relevance to this case. Reciprocal attorney admission and disciplinary provisions are a common feature of federal bars, such as the bar of this Court. *See* D. Minn. L.R. 83.6(d)(1) ("Unless the court orders otherwise, an attorney who has been temporarily or permanently prohibited from practicing before any other court or jurisdiction automatically forfeits the right to practice before this court for the same period.")  Yet state and federal admission and disciplinary systems remain independent, and a state cannot by itself prevent an attorney who is duly licensed to practice in federal court from doing so.[3] The fact that the VA chooses to incorporate and rely on state standards in some respects

---

[3]*See Theard v. United States*, 354 U.S. 278, 281 (1957) ("While a lawyer is admitted into a federal court by way of a state court, he is not automatically sent out of the federal court by the same route.  The two judicial systems of courts, the state judicatures and the federal judiciary, have autonomous control over the conduct of their officers, among whom, in the present context, lawyers are included."); *see also Surrick*, 449 F.3d at 529 ("Although federal courts have traditionally used admission to the bar of a state court as a standard for initial admission to their bars, admission to practice law before a state's courts and admission to practice before the federal courts in that state are separate, independent privileges."); *In re Desilets*, 291 F.3d 925, 929 (6th Cir. 2002) (explaining that state rules do not govern practice in federal courts and noting that "[a]lthough federal courts often reference state rules in their requirements (as did the rule at issue here—an applicant must be properly licensed by a state to be admitted), they need not do so"); *State Unauthorized Prac. of L. Comm. v. Paul Mason & Assocs., Inc.*, 46 F.3d 469, 471–72 (5th Cir. 1995) (holding that state bar could not prevent unlicensed agent from performing certain federally authorized bankruptcy work notwithstanding, among other things, the federal court's reliance on state licensing and reciprocal admission); *Baylson v. Disciplinary Bd. of Sup. Ct. of Penn.*, 975 F.2d 102, 111–12 (3d Cir. 1992) (holding that state rule of professional conduct requiring prosecutors to obtain judicial approval to subpoena an attorney to appear before a grand jury could not be enforced against federal prosecutors).

therefore does not mean that the states can condition the right to practice before the VA on standards that the VA itself has not chosen to adopt.

That said, the Court notes that the parties have not addressed the significance of 38 U.S.C. § 5901, which appears to create an exception to the federal licensing scheme for state-licensed attorneys who comply with the (apparently minimal) requirements of 5 U.S.C. § 500. The existence of this separate, state-controlled route to practice before the VA could potentially undermine the inference that Congress intended to occupy the field. *But see Augustine v. Dep't of Veterans Affs.*, 429 F.3d 1334, 1340 (Fed. Cir. 2005) ("Allowing state control [over practice before the Merit Systems Protection Board] would plainly impede the conduct of federal proceedings even though the Board does not have procedures for admitting counsel to practice before it."); *Polydoroff v. ICC*, 773 F.2d 372, 374 (D.C. Cir. 1985) (although 5 U.S.C. § 500 "prohibits agencies from erecting their own supplemental admission requirements for duly admitted members of a state bar," such practitioners are still subject to the agencies' inherent disciplinary authority).

The Court need not resolve this issue now, however; as already noted, the issue of conflict preemption must be resolved on the basis of a factual record. Suffice it to say that plaintiffs have stated a plausible claim that Minn. Stat. § 197.6091 and Minn. Stat. § 196.05, subd. 1(12), are preempted by federal law, and defendants' motion to dismiss that claim is therefore denied.

### C. *First Amendment*

Plaintiffs next allege that Minn. Stat. § 197.6091 and Minn. Stat. § 196.05, subd. 1(12), violate the First Amendment.  Defendants respond that the disclosure requirements are permissible under *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985).  As discussed at the hearing on defendants' motion to dismiss, however, the Court doubts that the *Zauderer* standard applies, as the disclosure requirements do not appear to be "reasonably related to the State's interest in preventing deception of consumers." *Id.* at 651.  In addition, the state-mandated disclosure form promulgated under § 196.05 appears to go beyond providing "purely factual and uncontroversial information about the terms under which [practitioners'] services will be available," *id.*, and instead appears to cross the line into compelled advocacy regarding a controversial issue (specifically, whether the free services provided to veterans are equivalent to the services provided for a fee). *See* Compl. Ex. A.  The Court will be better positioned to resolve these and other issues after it has a factual record.  Accordingly, defendants' motion to dismiss plaintiffs' First Amendment claim is denied.

### D. Remaining Issues

Finally, as discussed at the hearing, the Court agrees with defendants that Governor Walz is not a proper defendant and that plaintiffs' remaining claims are without merit.

With respect to Governor Walz: Under the Eleventh Amendment, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citation and quotation marks omitted). In *Ex parte Young*, the Supreme Court recognized an exception to Eleventh Amendment immunity for claims seeking to prospectively enjoin a state official from violating federal law. 209 U.S. 123, 156–57 (1908). For this exception to apply, however, the state official must have "some connection" with the enforcement of the allegedly unconstitutional law; otherwise, the lawsuit is "merely making [the official] a party as a representative of the state, and thereby attempting to make the state a party." *Id.* at 157.

The state attorney general—not the governor—is explicitly made responsible for seeking civil penalties for violations of Minnesota's disclosure requirements. *See* Minn. Stat. § 197.6091, subd. 4. Plaintiffs provide no reason to believe that the governor has any responsibility for enforcing any aspect of the challenged provisions. Accordingly, the Court dismisses all claims against Governor Walz without prejudice. *See Calzone v.*

*Hawley*, 866 F.3d 866, 870 (8th Cir. 2017) (Missouri governor's "general executive responsibility" to enforce the law "is an insufficient connection to the enforcement of a statute to avoid the Eleventh Amendment").

With respect to plaintiffs' remaining claims:  For the reasons described in defendants' briefing, plaintiffs' claims under the Equal Protection Clause, the Due Process Clause, the Commerce Clause, and the Contracts Clause are without merit.  The disclosure requirements are rationally related to a legitimate state interest.  *Birchansky v. Clabaugh*, 955 F.3d 751, 757 (8th Cir. 2020) ("We will uphold a state law that does not draw a suspect classification or restrict a fundamental right against an equal protection or substantive due process challenge if it is rationally related to a legitimate state interest.").[4]  The disclosure requirements neither discriminate against nor impose an undue burden on interstate commerce, and they do not apply to commerce that takes place wholly outside Minnesota's borders.  *Grand River Enters. Six Nations, Ltd. v. Beebe*, 574 F.3d 929, 942–44 (8th Cir. 2009) (upholding regulation against Commerce Clause challenge).  Finally, the disclosure requirements do not affect contracts that were in

---

[4]Plaintiffs have not identified any "fundamental right" on which their equal-protection or due-process claims might be premised.  Of course, if the disclosure requirement is found to violate the First Amendment, then it will necessarily be found to "restrict a fundamental right."  *Birchansky*, 955 F.3d at 757.  In that case, however, plaintiffs will be entitled to relief by virtue of the First Amendment, and any equal-protection or due-process claim premised on that violation would be entirely redundant.

existence at the time that the requirements were enacted.  *Texaco, Inc. v. Short*, 454 U.S. 516, 531 (1982) (rejecting a Commerce Clause challenge because "[t]he statute cannot be said to impair a contract that did not exist at the time of its enactment").  The Court therefore grants defendants' motion to dismiss these claims.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' motion to dismiss [ECF No. 10] is GRANTED IN PART and DENIED IN PART.

2. The motion is GRANTED with respect to plaintiffs' claims under the Equal Protection Clause, the Due Process Clause, the Commerce Clause, and the Contracts Clause, and those claims are DISMISSED WITH PREJUDICE AND ON THE MERITS.

3. The motion is GRANTED with respect to all claims against defendant Timothy Walz, and those claims are DISMISSED WITHOUT PREJUDICE.

4. The motion is DENIED in all other respects.

Dated:  March 9, 2021                                 s/Patrick J. Schiltz  
                                                      Patrick J. Schiltz  
                                                      United States District Judge